FILED
JAMES BONINI
CLERK

06 DEC 22 PM 12:25

IN THE UNITED STATES DISTRICT
FOR THE SOUTHERN DISTRICT OF OHIO

United States of America

v.                                  Docket No. 1, 02-CR-029

Floyd M. Bruce

BRIEF IN SUPPORT FOR SPEEDY RESENTENCING

That on or about April 7, 2005, The United States Court of Appeals for the Sixth Circuit remanded this matter for resentencing in light of United States v Booker, 125 Sct 738 (2005).

That the defendant respectfully Moves the Honorable Court to consider and grant his request for an early court date. The defendant hereby submits the following to support his request

The defendant states that he was previously in Immigration custody and was actively participating in an on-going release process ordered by the United States District Court for the Middle District of Pennsylvania, which has now been abruptly interrupted for

resentencing In this matter.

In addition the defendant requests the honorable Court to take Into Consideration that he has Completed the Initial Sentence Imposed by the court, since October, 2004.

That the defendant prays the honorable Court not to Sentence him to additional time, and to grant his request for an Early court date.

I hereby enclose the aforementioned Court order.

I affirm under penalty of Perjury that the foregoing Is true and correct.

Dated December, 20, 2006

Respectfully Submitted
Floyd Murray Bruce
Grant County Detention Center
212 Barnes Road,
Williamstown, Kentucky, 41097

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

FLOYD BRUCE,  :
      Petitioner  :
      :
v.  :    CIVIL NO. 4:CV-06-2023
      :
JENNINE DONATE, ET AL.,  :    (Judge McClure)
      :
      Respondents  :

**ORDER**

October 30, 2006

FILED
WILLIAMSPORT, PA

MARY E. D'ANDREA, CLERK
Per _____
      Deputy Clerk

**Background**

Floyd Murray Bruce, a/k/a Murray Floyd Bruce, a/k/a Joseph Ekwesi, a/k/a Michael Oduyayo ("Petitioner"), initiated this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 regarding his present detention at the Lackawanna County Prison, Scranton, Pennsylvania. Named as Respondents are Warden Jennine Donate of the Lackawanna County Prison; the Bureau of Immigration and Customs Enforcement ("ICE"); ICE Field Office Director Thomas Decker; and Secretary Michael Chertoff of the Department of Homeland Security. Petitioner has also filed an in forma pauperis application.

Petitioner states that he is 43 years old and was born in Hamilton, Bermuda. Bruce admits that he was detained by immigration officials upon entering the United States in May, 1989. According to the petition, an Immigration Judge ordered his exclusion from this country on February 21, 1990. Pursuant to a settlement agreement, Bruce withdrew an appeal to the Board of Immigration Appeals ("BIA"), and was deported to Bermuda on June 20, 1991. However, Petitioner was refused entry into Bermuda and was returned to the United States.[1]

On February 3, 1993, Petitioner was granted supervised release. However, in January, 2003, Bruce was convicted of "a violation of a Federal Bank Statute" in the United States District Court for the Western District of Ohio. Record document no. 1, ¶ 18. Upon completing service of his federal sentence in October, 2004, Petitioner was taken into ICE custody and the prior order of exclusion was reinstated. See id.

By Notice dated February 4, 2005, the ICE advised Bruce that it would be conducting a file custody review the following month for the purpose of ascertaining Bruce's suitability for release from custody. See Record document no. 3, Exhibit F. On March 31, 2005, Petitioner was informed that he would not be released from ICE

---

[1] Bruce states that he was denied entry into Bermuda because Interpol indicated that he had a criminal record in England and had been deported from England to Nigeria under the name of Ekwesi a/k/a Oduyayo. Thereafter, he was deported from Nigeria. See Record document no. 1, ¶ 14-15.

2

custody and that the removal period would be extended due to his non-cooperation in effecting his deportation. See id. at Exhibit L. Bruce pled guilty to a charge of disorderly conduct on April 7, 2005 in the State of New York and was sentenced to time served. The ICE issued a second notice of file custody review to Petitioner on April 14, 2005. It advised Bruce that his custody status would again be reviewed during June, 2005.

On August 17, 2005, Petitioner was indicted by a grand jury in this district court on charges that he was preventing and hampering his removal from the United States, United States v. Bruce, Criminal No. 3:05-CR-318 (Vanaskie, J.). He was transferred to the Lackawanna County Prison on August 24, 2005. Magistrate Judge Thomas Blewitt issued an Order of Detention Pending Trial on August 31, 2005. See Bruce, Criminal No. 3:CV-05-CR-318, Record document no. 14. Following a bench trial, the Petitioner was acquitted of all charges on September 26, 2006.[2]

Bruce states that he has been in custody of the ICE since October 15, 2004. He adds that attempts to obtain his removal to England, Denmark, Dominica, Nigeria, and the Bahamas have failed and that no country is willing to accept him. He notes

---

[2] During the pendency of Petitioner's criminal prosecution before Judge Vanaskie, a prior habeas corpus petition Bruce initiated before this Court which sought his release pending deportation was dismissed.

3

that the ICE has not provided him with a decision regarding a file custody review scheduled for June, 2005 and that his requests for release to the ICE's Headquarters Post Detention Unit ("HQPDU") have gone unanswered. See id. at ¶¶ 27-28.

His present petition does not challenge the execution of his removal order but rather "his prolonged detention pending his departure." Id. at ¶ 31. As relief, Petitioner seeks his release on supervision pending removal under the standards announced in Zadvydas v. Davis, 533 U.S. 678 (2001). Based on the Supreme Court's decision in Zadvydas, this Court will transfer the petition to the ICE as a request for either an initial custody determination under 8 C.F.R. § 241.4(h) or review under 8 C.F.R. § 241.13.

## Discussion

Detention, release, and removal of aliens ordered removed is governed by the provisions of 8 U.S.C. § 1231. Under § 1231(a), the Attorney General has ninety (90) days to remove an alien from the United States after his order of removal, during which time detention is mandatory.[3] At the conclusion of the ninety (90) day period,

---

[3] Section 1231(a)(1)(B) provides:

The removal period begins to run on the latest of the following:

    (i) The date the order of removal becomes administratively final.
(continued...)

4

the alien may be held in continued detention, or may be released under continued supervision. 8 U.S.C. §§1231(a)(3) & (6).[3]

In Zadvydas, the United States Supreme Court addressed the issue of whether § 1231(a)(6) authorizes the Attorney General to detain a removable alien indefinitely beyond the ninety (90) day removal period or only for a period reasonably necessary to effectuate the alien's deportation. Reasoning that the indefinite detention of aliens "would raise serious constitutional concerns," the Court concluded that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." Zadvydas, 533 U.S. at 689. Furthermore, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. To establish uniformity in the federal courts, the Court recognized six (6) months as a "presumptively reasonable period of detention." Id. at 701.

---

[3] (...continued)

    (ii) If the removal order is judicially reviewed and if the court orders a stay of the removal of the alien, the date of the court's final order.

    (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. At the conclusion of the 90 day period, the alien may be held in continued detention, or may be released under continued supervision. 8 U.S.C. §§1231(a)(3) & (6).

5

The Supreme Court further directed that if the alien provides good reason to believe that there is no significant likelihood of deportation in the reasonably foreseeable future at the conclusion of the six (6) month period, the burden shifts to the government to "respond with evidence sufficient to rebut that showing." Id. It stated that not every alien must be released after six (6) months; but, rather, an alien may still be detained beyond six (6) months "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. The Zadvydas holding was limited to removable aliens. In Clark v. Martinez, __ U.S. __, 125 S.Ct. 716, 727 (2005), the Supreme Court extended Zadvydas to two Mariel Cubans who had been deemed inadmissible to the United States. Thus, Bruce is entitled to protection under Zadvydas regardless of whether he is a removable or an inadmissible alien.

Pursuant to 8 C.F.R. § 241.4, immediately following the expiration of the ninety (90) day removal period, the ICE's field office director having jurisdiction over the alien shall initiate an initial custody determination as to whether the detainee should be released. The ICE also adopted 8 C.F.R. § 241.13 which "establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at §241.4 after the expiration of the removal period, where the alien has provided good reason to believe

6

there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R. §241.13(a). Specifically, an eligible alien may make a written request for release to the HQPDU, "asserting the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future to the country to which the alien was ordered removed and there is no third country willing to accept the alien." 8 C.F.R. § 241.13(d)(1).

Within ten (10) business days of receipt of the request, the HQPDU must provide the alien a written response acknowledging receipt of his request and explaining the procedures that will be used to evaluate the request. 8 C.F.R. § 241.13(e)(1). The HQPDU may grant an interview to the alien if such an interview would "provide assistance in rendering a decision." 8 C.F.R. § 241.13 (e)(5). The factors that the HQPDU must consider include:

> the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question, and the receiving country's willingness to accept the alien into its territory.

8 C.F.R. § 241.13(f). The Regulation further provides that the "HQPDU shall issue a

7

written decision based on the administrative record, including any documentation provided by the alien, regarding the likelihood of removal and whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future under the circumstances. The HQPDU shall provide the decision to the alien, with a copy to counsel of record, by regular mail." 8 C.F.R. § 241.13(g).

As previously noted, Petitioner acknowledges that a final order of removal has been entered against him. This petition was filed more than ninety (90) days after he was taken into custody by the ICE on October 15, 2004. Inasmuch as Bruce previously submitted requests with the ICE and has now challenged his continued detention by filing a petition for a writ of habeas corpus under §2241, the Respondents are instructed, in accordance with the directive of the Attorney General, to treat, as of this date, the petition as a request for either an initial custody determination or release under 8 C.F.R. §241.13.[4]  See Zhang v. United States Attorney General, Civil No. 3:CV-02-336 slip op. (M.D. Pa. March 11, 2002)(Conaboy, J.); Singh v. INS, Civil No. 1:CV-01-1820, slip op. (M.D. Pa. Oct. 2, 2001)(Rambo, J.).[5]

---

[4]  Petitioner indicates that an initial custody determination was scheduled for June, 2005, but he was never provided with any decision.

[5]  The Court recognizes that the six (6) month period contemplated by
(continued...)

8

The ICE shall respond to the request within thirty (30) days as mandated. If a timely response is not provided by the ICE, Petitioner may request that this action be reopened. Having transferred the matter to the ICE for disposition under existing review procedures, the petition will be dismissed without prejudice. Consequently,

**IT IS THEREFORE ORDERED THAT:**

1. Petitioner's in forma pauperis application is granted.

2. The petition for writ of habeas corpus to the extent it challenges Bruce's ongoing detention is construed as a request for either an initial custody determination or release under 8 C.F.R. § 241.13. This action is hereby transferred to the ICE with instructions to respond to the request as mandated under said regulations.

3. Petitioner's challenge to his ongoing detention, having been transferred to the ICE for disposition under its existing review procedures, is hereby dismissed without prejudice.

4. The Clerk of Court is directed to serve a copy of the Petition and Exhibits (Docs. 1 & 3) and this Order on the named Respondents and the ICE.

---

[5] (...continued)
Zadvydas has not expired.

5.  Petitioner's motion for appointment of counsel (Record document no. 2) is denied as moot.

6.  The Clerk of Court is directed to close this case.

```
                    s/ James F. McClure, Jr.
            JAMES F. McCLURE, JR.
            United States District Judge
```